**C. Victor BENSON, Robert Corbett, Arthur Eisenberg, Jeffrey S. Morgan, James O'Connor as Trustees and Fiduciaries of the Teamsters Local 814 Pension, Annuity and Welfare Funds, Plaintiffs–Appellees,**

v.

**BROWER'S MOVING & STORAGE, INC., Defendant–Appellant.**

No. 1154, Docket 90–7001.

United States Court of Appeals, Second Circuit.

Argued April 20, 1990.

Decided June 28, 1990.

Robert S. Nayberg (Martin H. Scher, Carle Place, N.Y., of counsel), for defendant-appellant.

Michael Barrett (Eugene S. Friedman, Jay P. Levy–Warren, Friedman & Levy–Warren, New York City, of counsel), for plaintiffs-appellees.

Before TIMBERS, MESKILL and PIERCE, Circuit Judges.

MESKILL, Circuit Judge:

In this appeal we consider the defenses available to an employer sued by a union pension fund for delinquent pension contributions. The individual plaintiffs are trustees of the Teamsters Local 814 Pension, Annuity and Welfare Funds (the Funds), which are multiemployer employee benefit plans within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA). Defendant Brower's Moving & Storage, Inc. (Brower's) is an employer required by the terms of a collective bargaining agreement with Local 814, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers ("Local 814" or "the union"), to make contributions on behalf of Brower's employees to the Funds. The Funds brought this action against Brower's pursuant to section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1145, to recover delinquent contributions. Brower's maintained, *inter alia,* that it had no obligation to make the contributions because Local 814 had abandoned the collective bargaining agreement. The Funds moved for summary judgment before the United States District Court for the Eastern District of New York, Dearie, J. The district court granted the motion and ordered Brower's to make the delinquent contributions, holding that section 515 of ERISA precludes Brower's from raising the union's abandonment of the collective bargaining agreement as a defense against the Funds. *See* 726 F.Supp. 31 (E.D.N.Y. 1989). The court entered judgment in favor of the Funds, and Brower's appeals.

We affirm.

## BACKGROUND

The relevant facts are not in dispute. Brower's has been a party to a series of collective bargaining agreements with Local 814 since 1951. The two agreements relevant to this dispute covered the periods from April 1, 1983 through March 31, 1986, and from April 1, 1986 through March 31, 1989. Each agreement required Brower's to contribute to the Funds on a monthly basis to pay for pension, annuity and welfare benefits for employees covered by the agreements.

An audit conducted by the Funds in December 1987 revealed that Brower's had made no contributions from April 1983 through September 1987 for twelve employees covered by the agreements, resulting in a deficiency of $239,639.30.[1] Brower's did pay union dues and make pension contributions during this period for two Brower's family members. Brower's refused to honor the Funds' requests for payment of the deficiency, and the Funds commenced this action in February 1988 to recover the unpaid contributions.

The Funds subsequently moved for summary judgment on the basis that the delinquencies were established and that ERISA section 515 precludes Brower's from asserting contract defenses in a benefit plan collection action. Brower's responded with a two-part defense. First, it contended that a valid collective bargaining agreement is a jurisdictional prerequisite to liability under section 515, and that the collective bargaining agreements with Local 814 were invalid and unenforceable because they had been "abandoned" by the union, *i.e.,* Brower's had not complied with several terms of the agreements and the union had

---

1. The district court stated that the present dispute involves only the collective bargaining agreement for the period April 1983 through March 1986. 726 F.Supp. at 32. The period of delinquent contributions, however, extends from April 1983 through December 1987. Thus, the collective bargaining agreement running from April 1986 through March 1989 also is relevant.

acquiesced in the noncompliance. Therefore, Brower's asserted, it had no liability to the Funds. Second, Brower's maintained that the district court had no jurisdiction to decide this preliminary question of the validity of the collective bargaining agreements, and therefore the action had to be dismissed.

The district court granted the Funds' motion, holding that (1) abandonment amounts to a defense going to the enforceability of the contract, and contractual defenses available against a union may not be raised against a benefit plan by virtue of section 515 of ERISA, and (2) even if such defenses could be raised, a district court has jurisdiction to determine the validity of a collective bargaining agreement under LMRA section 301(a), 29 U.S.C. § 185(a). The court then opined that the 1983–1986 contract is valid, but expressed no opinion on the 1986–1989 contract.

On October 11, 1988, eight months after the Funds commenced this action, Local 814 filed an unfair labor practice charge against Brower's with the National Labor Relations Board ("NLRB" or "the Board"). The union alleged that Brower's had violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1), 158(a)(5), by repudiating its 1986–1989 contract with the union. Specifically, the union asserted that Brower's had failed to make contributions to the Funds and had failed to comply with other contract terms regarding wages, holidays, vacations and union security. Brower's argued that no contract existed between it and the union, that even if a contract did exist, it had been abandoned by Local 814, and that if no abandonment had occurred, the union was estopped from enforcing the contract after failing to enforce any of the collective bargaining contracts with Brower's since 1951. The Administrative Law Judge (ALJ) who heard the case ruled in favor of Brower's, concluding that the 1986–1989 contract did not give rise to a presumption of majority status (a prerequisite to a section 8(a)(5) violation) because Brower's and the union had not maintained a true collective bargaining relationship over the years. Alternatively, the ALJ

ruled that Local 814 had abandoned the contract by not enforcing its terms.

A three member panel of the NLRB disagreed, finding "that since 1951, the Union has been the designated exclusive collective-bargaining representative of the employees in the unit described in the complaint, which we find appropriate for collective bargaining, and that the Union has been recognized as such by [Brower's]." It further found "that the 1986–1989 contract is valid and gives rise to an irrebuttable presumption of majority status and that the Union has not abandoned its administration of the contract." *Brower's Moving & Storage*, 297 N.L.R.B. No. 28 (Nov. 8, 1989). The panel then found that, since April 11, 1988, Brower's had violated sections 8(a)(1) and 8(a)(5) of the NLRA, and ordered Brower's to comply with the collective bargaining agreement and to make restitution for past violations. The Board did not order relief for the period before April 11 because NLRA section 10(b), 29 U.S.C. § 160(b), bars relief based on unfair labor practice charges filed more than six months after the occurrence. The NLRB's petition for enforcement of its order is currently pending before another panel of this Court.

The district court was aware of these administrative proceedings and the NLRB's decision, but regarded the NLRB's decision as irrelevant to the issue whether section 515 of ERISA permits Brower's to raise the validity of its collective bargaining agreements as a defense against the Funds.

## DISCUSSION

On appeal, Brower's again argues that it has no liability to the Funds because no valid collective bargaining agreement exists. Specifically, Brower's raises the defenses of abandonment of contracts and lack of majority representation. We conclude that neither defense is available to Brower's.

We begin our analysis by noting that ERISA sections 502 and 515 clearly give a district court subject matter jurisdiction to

hear an action brought by benefit plan trustees to enforce an employer's promise to make contributions. *See* 29 U.S.C. §§ 1132(e)(1), 1145; *see also Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 547, 108 S.Ct. 830, 835, 98 L.Ed.2d 936 (1988) ("The liability created by § 515 may be enforced by the trustees of a plan by bringing an action in federal district court pursuant to § 502."). Of course, the benefit plan must prove that the employer promised to contribute to the plan in order to succeed on its claim. In this case, the Funds satisfied this requirement by producing collective bargaining agreements that Clifford Brower, the Secretary and Treasurer of Brower's, admittedly signed.[2] Viewed in this light, Brower's argument is that, as soon as an employer raises the defense of abandonment or lack of majority status, the district court is deprived of subject matter jurisdiction because it must defer to the NLRB on the question of the contract's validity. Brower's thus raises the same cry as countless other employers across the country: "Why must I contribute to a benefit plan when no 'real' collective bargaining agreement exists?" The short answer, and the one we find dispositive, is that Congress intended to insulate benefit plans from exactly these defenses in adding section 515 to ERISA. Accordingly, we need not reach Brower's second argument that the district court erred by not deferring to the ongoing NLRB proceedings on the question of validity.

A. *Enactment and Interpretation of Section 515*

Section 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The reasons underlying the enactment of section 515 are clear, and we are not the first court to explore them. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1152–54 (7th Cir.1989) (in banc); *Bituminous Coal Operators' Assoc., Inc. v. Connors,* 867 F.2d 625, 632–34 (D.C.Cir.1989); *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773–75 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). Accordingly, we will discuss the relevant case law and legislative history only briefly.

■ The Funds occupy the position of a third party beneficiary of the collective bargaining agreement between Brower's (promisor) and Local 814 (promisee). *Robbins v. Lynch,* 836 F.2d 330, 333 (7th Cir. 1988). Third party beneficiaries generally are subject to defenses that the promisor could raise in a suit by the promisee. *See generally* J. Calamari & J. Perillo, *The Law of Contracts* § 17–8, at 623–24 (2d ed. 1977). That is, they step into the shoes of the promisee. Collective bargaining agreements, however, are an exception to this general rule. *See Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 468–69, 80 S.Ct. 489, 494–95, 4 L.Ed.2d 442 (1960). In *Benedict Coal,* the Court held that an employer could not raise the union's breach of the collective bargaining agreement as a defense against an employee benefit plan suing for delinquent contributions unless the collective bargaining agreement preserved such a defense in "unequivocal words." *Id.* at 470–71, 80 S.Ct. at 495–96.

■ In the wake of *Benedict Coal,* some employers seeking to escape their contribution obligations adopted a new strategy. Instead of arguing that the union had breached the collective bargaining agreement, they raised defenses going to the formation of the collective bargaining agreement such as fraud in the inducement. *See Gerber Truck,* 870 F.2d at 1152.

2. Clifford Brower signed the 1983–1986 contract and a Memorandum of Agreement dated February 18, 1986, by which Brower's agreed to be bound by the 1986–1989 contract. The 1986– 1989 contract was signed by the Employers Association of the Moving and Storage Industry on behalf of individual employers, including Brower's.

Congress responded by adding section 515 to ERISA. Its stated purpose was to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law—other than 29 U.S.C. 186." 126 Cong.Rec. 23,039 (1980) (remarks by Representative Thompson). This new provision was essential to the viability of employee benefit plans. The high costs associated with employer delinquency

> detract from the ability of plans to formulate or meet funding standards and adversely affect the financial health of plans. Participants and beneficiaries of plans as well as employers who honor their obligation to contribute in a timely fashion bear the heavy cost of delinquencies in the form of lower benefits and higher contribution rates.

*Id.* Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations. *See Gerber Truck,* 870 F.2d at 1151. For this reason, Congress placed employee benefit plans in a position superior to the original promisee, analogous to a holder in due course.

The courts of appeals that have construed section 515 have unanimously regarded it as a limitation on the defenses available to an employer when sued by an employee benefit plan. For example, an employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement, *see Gerber Truck,* 870 F.2d at 1154, that the employer was fraudulently induced to enter into the agreement, *see Trustees of Laborers Local Union #800 Health and Welfare Trust Fund v. Pump House, Inc.,* 821 F.2d 566, 568 (11th Cir.1987); *Rozay's Transfer,* 791 F.2d at 775, or that no contract was formed because of unilateral or mutual mistake of fact, *see Connors,* 867 F.2d at 632–36; *see also Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc.,* 795 F.2d 1501, 1504–05 (9th Cir.1986) (rejecting defense that no valid contract was formed due to lack of mutual assent). Our research has disclosed only two de-

fenses recognized by the courts: (1) that the pension contributions themselves are illegal, *see Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 86–88, 102 S.Ct. 851, 861–62, 70 L.Ed.2d 833 (1982), and (2) that the collective bargaining agreement is void (not merely voidable), *compare Operating Eng'rs Pension Trust v. Gilliam,* 737 F.2d 1501, 1503–05 (9th Cir.1984) (employer who was not aware he was signing a collective bargaining agreement could raise defense), *with Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund,* 728 F.2d 1262, 1265–66 (9th Cir.1984) (employer who knew he was signing collective bargaining agreement, but who was fraudulently induced to enter it, could not raise defense). *See generally Rozay's Transfer,* 791 F.2d at 773–74 (discussing *Gilliam* and *Bjorklund*). Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole. *Cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the ... language [of the United States Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.") (footnote omitted).

### B. *Defenses Raised by Brower's*

■ Brower's attempts to scale this mountain of adverse authority by arguing that its defense of abandonment means there is no valid collective bargaining agreement in existence, and defenses going to the very existence of the agreement are not prohibited by section 515. This argument is without merit for two reasons.

First, we are doubtful that an abandoned agreement must be deemed non-existent. Abandonment is an NLRB doctrine by which an outside union seeking to repre-

sent employees may defeat the claim of the employer and incumbent union that an existing collective bargaining agreement acts as a bar to the outside union's petition for representation. *See, e.g., Austin Powder Co.,* 201 N.L.R.B. No. 90, 82 L.R.R.M. 1272, 1273 (1973); *Raymond's, Inc.,* 161 N.L.R.B. No. 80, 63 L.R.R.M. 1363, 1364 (1966). In other words, an abandoned collective bargaining agreement will not bar the outside union's petition because the NLRB "cannot honor that contract as one imparting sufficient stability to the bargaining relationship to justify [the NLRB's] withholding a present determination of representation." *Raymond's, Inc.,* 63 L.R.R.M. at 1364 (footnote omitted). Thus, an NLRB determination of abandonment means only that the "contract bar" rule will not apply. "The 'contract bar' doctrine is a prudential concept used by the Board for representational election purposes only." *O'Hare v. General Marine Transport Corp.,* 740 F.2d 160, 172 (2d Cir.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). A determination that a contract does not bar an election "is not equivalent to a holding that for all purposes there is no valid written agreement." *Id.*

Second, assuming that abandonment means no valid written agreement exists, Brower's is not released from its obligation to the Funds because "nothing in ERISA makes the obligation to contribute [to a benefit plan] depend on the existence of a valid collective bargaining agreement." *Gerber Truck,* 870 F.2d at 1153. Lest there be any doubt on this point, we shall briefly return to the legislative history.

Representative Thompson, the manager of the legislation in the House, stated:

Sound national pension policy demands that employers who enter into agreements providing for pension contributions not be permitted to repudiate their pension promises.

In this regard we endorse judicial decisions such as *Lewis v. Benedict Coal Corp.,* 361 U.S. 459 [80 S.Ct. 489, 4 L.Ed.2d 442] (1960).... Cases such as *Western Washington Laborers–Employers Health and Security Trust Fund v. McDowell,* ... 103 LRRM 2219 (W.D.Wash., 1979) and *Washington Area Carpenters Welfare Fund, et al. v. Overhead Door Company,* [488 F.Supp. 816 (D.D.C.1980)], are considered to have been incorrectly decided and this legislation is intended to clarify the law in this respect by providing a direct, unambiguous ERISA cause of action to a plan against a delinquent employer.

126 Cong.Rec. 23,039 (1980).

Both *McDowell* and *Overhead Door* involved "pre-hire" agreements, which are agreements commonly executed by employers in the construction business. By signing a pre-hire agreement an employer agrees to abide by the terms of a collective bargaining agreement as soon as he hires his employees. At the time that these two cases were decided, pre-hire agreements were valid and enforceable only if a majority of the workers hired ultimately wished to be represented by the union. *See NLRB v. Local Union No. 103, Int'l Assoc. of Bridge, Structural & Ornamental Iron Workers,* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978).[3] The employers in *McDowell* and *Overhead Door* sought to escape liability to the benefit plans by arguing that their pre-hire agreements were invalid because the unions had failed to attain majority status, and therefore no obligation to contribute to the benefit plans existed. The benefit plans argued that the employers could not raise such a defense.

Both courts permitted the employers to maintain their defenses and ruled in favor of the employers. The court in *Overhead Door* stated: "[The cases cited by the Funds] involved collateral defenses to enforcement of the agreements. The defense in the instant case, on the other hand,

---

**3.** In 1987, the NLRB overruled longstanding precedent and held that an employer may not repudiate a pre-hire agreement during the term of the contract. *See John Deklewa & Sons,* 282 N.L.R.B. 1375 (1987), *enforced sub nom. Inter-* *national Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3 v. NLRB,* 843 F.2d 770 (3d Cir.), *cert. denied,* 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988).

concerns the validity of the very agreement that sought to establish a contractual relationship between Funds and Overhead." 488 F.Supp. at 819. Brower's argument is identical to the one accepted in *Overhead Door* and *McDowell,* and Congress clearly intended to forbid it.[4] In light of this unmistakably clear legislative intent, we need not devote any separate discussion to Brower's argument that it may raise lack of majority status as a defense.

We recognize that the result in this and similar cases may seem quite harsh. Brower's now must contribute to the Funds without a preliminary determination that there exists a collective bargaining agreement that would be recognized as valid under labor-management relations law. Our task today, however, is merely to enforce Congress' desire that benefit plans be able to rely on the written agreements presented to them. We note that an employer's liability in this situation is not limitless because an employer is liable under section 515 only for the effective period of the collective bargaining agreement. *See Advanced Lightweight,* 484 U.S. at 548–49, 108 S.Ct. at 835–36.

As noted above, the NLRB's determination that the most recent collective bargaining agreement between Brower's and Local 814 is valid will shortly be reviewed by this Court. We agree with the district court, however, that the issues raised in that litigation have been legislatively removed from the present action. We note that a district court may, in its discretion, choose to stay its proceedings pending an NLRB determination with respect to the collective bargaining agreement if the stay would serve the interests of fairness, efficiency and judicial economy without impairing the legislative intent underlying ERISA section 515. *See, e.g., Painters' Pension Trust Fund v. Manganaro Corp.,* 693 F.Supp. 1222, 1224–25 & n. 2 (D.D.C.1988). Should this Court overturn the NLRB's decision, Brower's may seek appropriate relief from the district court's judgment. We express no opinion on whether any relief is available or on what form it might take because those issues are not before us. The Funds need not await the outcome of the litigation between Brower's and the union, however, because that is the precise evil that Congress sought to avoid in enacting ERISA section 515.

We have considered Brower's other contentions and find them to be without merit.

### CONCLUSION

ERISA section 515, 29 U.S.C. § 1145, prohibits Brower's from raising as a defense either the union's abandonment of the collective bargaining agreement containing Brower's promise to contribute to the Funds, or the union's alleged lack of majority status. The judgment of the district court is affirmed. The Funds are entitled to recover reasonable attorney's fees and costs incurred in defending this appeal. 29 U.S.C. § 1132(g)(2)(D).

---

**4.** *Overhead Door* was subsequently reversed on other grounds. The Court of Appeals made note of the legislative history of section 515, but chose not to rely on the new statute because of a question regarding its retroactive effect. *See* 681 F.2d 1 (D.C.Cir.1982), *cert. denied,* 461 U.S. 926, 103 S.Ct. 2085, 77 L.Ed.2d 296 (1983). *McDowell* was reversed without opinion. *See* 673 F.2d 1341 (9th Cir.1982), *cert. denied,* 461 U.S. 926, 103 S.Ct. 2084, 77 L.Ed.2d 296 (1983).