**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 206, of the SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, AFL–CIO, Plaintiff–Counter–Defendant–Appellee,**

v.

**WEST COAST SHEET METAL COMPANY, Defendant–Counter–Plaintiff–Appellant.**

No. 91–55644.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1991.

Decided Jan. 28, 1992.

Jay D. Hanson, Fred M. Plevin, Gray, Cary, Ames & Frye, San Diego, Cal., for defendant-counter-plaintiff-appellant.

Robert A. Cantore, Gilbert & Sackman, Los Angeles, Cal., for plaintiff-counter-defendant-appellee.

Before SNEED, BEEZER and TROTT, Circuit Judges.

SNEED, Circuit Judge:

West Coast Sheet Metal (West Coast) filed this appeal after a successful motion for partial summary judgment by Sheet Metal Workers International Association Local 206 ("Union") and employee benefits plans affiliated with Sheet Metal Workers ("Trust Funds"), and the issuance of injunctive relief against West Coast. The parties' dispute concerns the scope of West Coast's obligations to contribute to employee benefit plans administered by the Trust Funds. The district court's injunction enforced a 1986 arbitration award that imposed a collective bargaining agreement on the Union and West Coast. We vacate that portion of the district court's injunction requiring West Coast to contribute to the Trust Funds for periods after the April 23, 1987 decertification of the Union.

## I.

## FACTS AND PROCEEDINGS BELOW

The relevant chronology of this case is as follows. In 1983, West Coast, by reason of its membership in Sheet Metal and Air Conditioning Contractors National Association of San Diego (SMACNA of San Diego), entered a three-year collective bargaining agreement with the Union. West Coast also independently signed this agreement. The agreement provided that West Coast was to make monthly contributions to the Trust Funds on behalf of West Coast employees. It also contained rights arbitration provisions, which provided that grievances arising out of interpretation or enforcement of the agreement and not resolved through negotiation would be submitted to a body known as the National Joint Adjustment Board (NJAB) for arbitration. Finally, the agreement's interest arbitration clause provided that if West Coast and the Union failed to negotiate a renewal contract upon expiration of the agreement, the contract dispute would be submitted to the NJAB for arbitration. West Coast asserts that the interest arbitration clause was eliminated from the agreement by oral modification in 1984; the Union disputes this.

West Coast withdrew from SMACNA of San Diego effective March 1, 1986. In late May 1986, West Coast independently opened contract renegotiations with the Union. These negotiations continued until June 27, 1986, when the Union notified West Coast of a deadlock. Over West Coast's objection, the Union invoked the interest arbitration clause and requested that the NJAB impose a new contract. On July 1, 1986, the original agreement expired, and West Coast ceased its monthly contributions to the Trust Funds.

On July 10, 1986, West Coast initiated its own grievance with the NJAB. In its grievance, West Coast stated that the Union's assertion of the continued existence of the interest arbitration clause violated their now-expired agreement. The Union seeks to characterize West Coast's grievance as a submission to the NJAB, under the rights arbitration provisions of the expired agreement, of the question whether the parties were still bound by the interest arbitration clause. West Coast, on the other hand, insists that it reserved the right to have a court determine this question.

On August 8, 1986, the NJAB heard the Union's grievance. In the course of doing so, it resolved the issue raised by West Coast's grievance as well.[1] The NJAB rejected West Coast's assertion that the interest arbitration clause had been eliminated, and imposed a new three-year contract on the Union and West Coast. The new contract required that West Coast continue to contribute to the Trust Funds.

On August 18, 1986, the Union filed the present action in district court to enforce the NJAB's award. West Coast cross-petitioned for the court to vacate the award and issue a declaratory judgment against the Trust Funds. The Trust Funds counterclaimed against West Coast for breach of contract, breach of trust agreement, and

---

**1.** In June 1987, the NJAB heard West Coast's grievance, and dismissed it on the grounds that the issue it raised had already been resolved at the earlier hearing. In August 1987, the Union petitioned the district court to enforce the dismissal of West Coast's grievance. The Union's petition was consolidated with the present action.

violations of ERISA § 515, 29 U.S.C. § 1145. The Trust Funds requested a permanent injunction to compel future trust fund contributions.

Proceedings in the district court were stayed for three years pending the outcome of an NLRB proceeding brought by West Coast, in which West Coast asserted that the Union had committed unfair labor practices by invoking arbitration and by attempting to enforce the NJAB's award in court. The NLRB proceeding was ultimately resolved in favor of the Union. *Sheet Metal Workers Int'l Ass'n Local Union 206*, 298 N.L.R.B. No. 107, 134 L.R.R.M. (BNA) 1258 (June 11, 1990), *review denied, West Coast Sheet Metal, Inc. v. NLRB*, 938 F.2d 1356 (D.C.Cir.1991). Meanwhile, on April 23, 1987, the employees of West Coast voted to decertify the Union as their bargaining representative, and West Coast began thereafter to provide its employees with benefits through an independent, self-funded plan. On June 30, 1989, the renewal contract expired.

In early 1991, the district court confirmed the NJAB arbitration award and granted summary judgment to the Trust Funds. After West Coast moved for reconsideration, the court reaffirmed its findings and issued an injunction against West Coast, with a proviso that the Union not seek to enforce the award with respect to periods after the Union's decertification. The court denied West Coast's cross-motion for summary judgment, and retained jurisdiction for the purpose of awarding damages to the Trust Funds. This appeal followed.

## II.

### JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1292(a)(1). A grant of summary judgment is reviewed de novo. *T.W. Elec.*

*Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987).

## III.

### ANALYSIS

#### A. *Validity of Renewal Contract*

Whether the renewal contract imposed by the NJAB in 1986 was binding on the parties at the time it was imposed depends on whether interest arbitration was properly invoked. West Coast asserts that the interest arbitration clause was eliminated by oral modification of the collective bargaining agreement. Alternatively, West Coast asserts that it was entitled to a judicial determination of whether the clause was eliminated. The district court held that as a matter of law, the clause could not be eliminated by oral modification of the agreement.[2]

We need not decide whether the district court's holding was correct. If the interest arbitration clause could not legally be eliminated, the NJAB's award was, of course, valid and binding on the parties. However, even if the clause could legally have been eliminated, and even if West Coast was otherwise entitled to a judicial determination whether the clause was in fact eliminated, West Coast waived its opportunity for such a judicial determination when it invoked arbitration by filing its grievance with the NJAB.

To refute this conclusion, West Coast contends that its grievance was merely an attempt to stop the Union from pursuing interest arbitration, and not a submission of the arbitrability issue to the NJAB. But it could stop the Union only if the interest arbitration clause had been expunged. But in order to find that the clause had been expunged, the NJAB logically was compelled to resolve the question whether the clause was still operative. In short, when West Coast sought to have the NJAB pre-

---

**2.** Because the district court concluded that the interest arbitration clause could not legally be eliminated, it did not specifically rule as to whether a certain statement by the Union's representative during contract renegotiations amounted to an agreement that the clause had

been eliminated, or whether the statement was merely a nonbinding acknowledgment of West Coast's position. West Coast's contention that the district court did make such a ruling is without merit.

vent the Union from pursuing interest arbitration, it could not escape running the risk that the NJAB might refuse to do so.

Our conclusion that West Coast waived its opportunity for a judicial determination of arbitrability is buttressed by this court's recent decision in *Orion Pictures Corp. v. Writers Guild of America, West, Inc.,* 946 F.2d 722 (9th Cir.1991). In *Orion Pictures,* an employer who contested the arbitrability of a collective bargaining dispute requested that *"in the event the arbitrator declined to dismiss* [the employer]," *id.* at 725, the arbitrator stay the proceedings pending judicial resolution of the arbitrability question. The court seized on this statement and held that the employer had "by its own admission" effectively submitted its dispute to arbitration. *Id.* West Coast has done the same. In its July 10, 1986 grievance letter, West Coast stated that the NJAB "should not deal with [the Union's] submission until the [arbitrability] issues raised by this grievance have been resolved pursuant to the [rights arbitration provisions] of the expired agreement." Like the employer in *Orion Pictures,* West Coast "has gone too far down the slippery slope in submitting its dispute to arbitration." 946 F.2d at 725.

Because West Coast similarly lost its opportunity for a judicial determination of arbitrability, it was bound by the NJAB's decision that the interest arbitration clause continued to be part of the collective bargaining agreement. Therefore, interest arbitration was proper, and West Coast was bound by the 1986 renewal contract imposed by the NJAB.

#### B. *Effect of the Union's Decertification*

■ Under the terms of the renewal contract, West Coast would owe contributions to the Trust Funds for the period from July 1, 1986 through at least June 30, 1989. However, we hold that the renewal contract became void prospectively as of the decertification of the Union on April 23, 1987. *See Sheet Metal Workers Int'l Ass'n, Local No. 162 v. Jason Mfg.,* 900 F.2d 1392, 1399 (9th Cir.1990). This extinguished West Coast's further obligations to the Trust Funds, so that in fact West Coast owes no contributions beyond April 23, 1987.

We find nothing in the language of the renewal contract that obligates West Coast to continue to contribute to the Trust Funds after the Union's decertification. The provisions of the contract that concern Trust Fund contributions must be interpreted in the context of the contract as a whole. A contract to contribute to a trust fund of a Union with which West Coast has no ongoing collective bargaining relationship makes no sense. The trust fund provisions have no legal effect when the Union is no longer the certified representative of West Coast's employees.

It is true that the trust documents themselves, to which the contract refers, do not appear in the record before us. However, it is unlikely that the trust documents obligate West Coast to continue to contribute to the Trust Funds on behalf of a decertified Union. Moreover, were it otherwise, undoubtedly the Trust Funds would have brought this fact to the court's attention. We conclude that there is no contractual obligation for West Coast to contribute to the Trust Funds beyond the date of decertification.

The district court, in reaching a contrary conclusion, held that the only recognizable defenses to fully enforcing an employer's obligation to contribute to a trust fund are that the contributions are illegal or that the collective bargaining agreement is void *ab initio.* We find this to be an arbitrary result. The district court failed to recognize that because the collective bargaining agreement became inoperative prospectively, it thereafter had no force or legal effect. Legal obligations have their source either in authority acting within its proper jurisdiction or in contract properly executed and currently effective. Here neither source exists.

The cases relied upon by the district court are distinguishable. In *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773–75 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987), this court held that an

employer could raise fraud in the execution, but not fraud in the inducement, as a defense to its obligation to contribute to the trust fund. *Rozay's Transfer* involved the employer's after-the-fact attempt to extricate itself through unilateral action from trust fund obligations that it knowingly accepted. By contrast, West Coast did not knowingly accept an obligation to continue to contribute to the Trust Funds after the Union's decertification. Indeed, it properly assumed that it had no such obligation. *Southern Cal. Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1265–66 (9th Cir.1984), which also concerned fraud in the inducement, is similarly distinguishable. In *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314–16 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990), an action for recovery by a union pension fund against an employer, the Second Circuit held that ERISA § 515 precluded the employer from raising the defense that the union had allegedly abandoned the collective bargaining agreement. The *Benson* court was concerned with giving effect to Congress' intent in ERISA § 515 to prevent employers from harming employee trust funds and their beneficiaries through unilateral action. 907 F.2d at 315–16. In *Benson*, the state had spoken. Here it has not. The relationship between employer and union has been terminated by vote of the employees. Employees lawfully have the power to do so. Finally, in *Berry v. Garza*, 919 F.2d 87 (8th Cir.1990), an employer knowingly entered a collective bargaining agreement despite the fact that the union had no majority status at the time the agreement was entered. Citing *Benson*, the Eighth Circuit held that the employer was estopped from raising the defense of lack of majority status to avoid his obligations to employee trust funds. *Id.* at 90. By contrast, in the instant case, the union lost its majority status at decertification, well after the collective bargaining agreement had been entered. At the time the 1986 agreement was imposed, West Coast had no way of being certain that the union would lose its majority status.

Justice also persuades us that West Coast's obligations to the Trust Funds terminated with the decertification of the Union. As stated earlier, West Coast has protected its employees' interests through a self-funded plan ever since decertification. It must not be required to make duplicative contributions that could impair its ability to maintain contributions to its self-funded plan, nor to contribute to a plan from which its employees can derive no benefit. The Trust Funds will incur no unfunded liability for want of West Coast's contributions. Current and future beneficiaries of the Trust Funds are not entitled to the benefit of a windfall at West Coast's expense. Finally, inasmuch as the Union has been decertified, our holding "poses no danger of the employer['s] tampering with the loyalty of union officials or of union officials['] exerting tribute from the employer." *Operating Eng'rs Pension Trust v. Gilliam*, 737 F.2d 1501, 1505 (9th Cir. 1984).

## IV.

## CONCLUSION

West Coast is liable under the 1986 contract for payments to the Trust Funds from July 1, 1986 through the decertification of the Union on April 23, 1987. We remand to the district court for a determination of damages. We do not reach the other issues raised by the parties. Both sides bear their own costs on appeal.

**VACATED IN PART and REMANDED.**