243 F.3d 112 (2nd Cir. 2001)
 TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND, TRUSTEES OF NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, AND TRUSTEES OF THE SPRINKLER INDUSTRY SUPPLEMENTAL PENSION FUND, Plaintiffs-Appellees-Cross-Appellants,
v.
FAIRFIELD COUNTY SPRINKLER COMPANY, INC., Defendant-Appellant-Cross-Appellee.
 Docket Nos. 99-9392(L); 99-9394(XAP)
August Term 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: October 13, 2000
Decided: March 12, 2001
 
 Defendant-appellant appeals from a judgment entered against it by the United States District Court for the District of Connecticut (Alfred V. Covello, Chief Judge) in a contribution action brought by the trustees (the "Trustees") of ERISA multi-employer benefit plans (the "Funds") for delinquent contributions. See 29 U.S.C. §§ 1132(a)(3), 1145. On appeal, defendant challenges the district court's grant of summary judgment to the Funds, contending (1) that § 302(a) of the Labor Management Relations Act, 29 U.S.C. § 186(a), precludes contribution for the period from August 1, 1994 through March 31, 1997, and (2) that material questions of fact exist as to whether any delinquency exists for the period from August 1, 1992 to July 31, 1994. Plaintiffs cross-appeal for attorneys' fees. See 29 U.S.C. § 1132(g).
 We agree with the defendant-appellant and accordingly vacate the entry of summary judgment. The case is remanded with instructions that the district court (1) enter summary judgment in favor of defendant with respect to contribution sought for the period from August 1, 1994 through March 31, 1997, and (2) proceed to trial with respect to the purported delinquency for the period from August 1, 1992 to July 31, 1994. Plaintiffs' cross-appeal for attorneys' fees is denied.
 GEORGE J. KELLY, JR., Siegel, O'Connor, Schiff & Zangari, P.C., New Haven, CT, for Defendant-Appellant.
 CHARLES W. GILLIGAN, Sally M. Tedrow, Keith R. Bolek, O'Donoghue & O'Donoghue, Washington, D.C., and THOMAS BROCKETT, Robert A. Cheverie & Assocs., East Hartford, CT, for Plaintiffs-Appellees.
 Before: WALKER, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and MARRERO, District Judge.*
 Vacated in part; reversed in part.
 Judge Van Graafeiland dissents in a separate opinion.
 JOHN M. WALKER, JR., Chief Judge:
 
 
 1
 This appeal follows an October 7, 1999 entry of summary judgment by the United States District Court for the District of Connecticut (Alfred V. Covello, Chief Judge) in favor of plaintiffs-appellees, various trustees (the "Trustees") of the National Automatic Sprinkler Industry Pension Fund, the National Automatic Sprinkler Industry Welfare Fund, and the Sprinkler Industry Supplemental Pension Fund (the "Funds"), against defendant-appellant Fairfield County Sprinkler Co. ("Fairfield"). The Funds were awarded $669,387.82 in delinquent contributions pursuant to §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"). See 29 U.S.C. §§ 1132(a)(3), 1145.
 
 
 2
 Defendant-appellant appeals from the summary judgment order on the grounds that (1) its contribution for the period from August 1, 1994 through March 31, 1997 is prohibited by § 302(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(a), and (2) disputed material factual questions exist regarding the purported delinquency for the period from August 1, 1992 through July 31, 1994. Plaintiffs have cross-appealed for attorneys' fees.
 
 BACKGROUND
 
 3
 The Funds are union-established multi-employer ERISA benefit plans that provide health and pension benefits to union employees working in the fire protection industry. The benefits are financed by employer contributions pursuant to collective bargaining agreements with various local unions representing industry employees.
 
 
 4
 Fairfield is a Connecticut company that sells and installs fire sprinkler systems. It employs on average between twenty and twenty-five people. Until May 1994, Fairfield was a member of the National Fire Sprinkler Association ("NFSA"), an association of employers in the fire protection industry, and granted the NFSA authority to enter into multi-employer collective bargaining agreements with local unions on its behalf.
 
 
 5
 For much of the period in question, NFSA entered into pre-hire agreements with various local unions of the United Association of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry of the United States of America. Such agreements are permitted under § 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f), and are commonly utilized in the construction industry to accommodate its ever-changing workforce in multiple states. Under the NFSA-negotiated agreements, a member-employer such as Fairfield agrees with local unions operating in assigned geographic areas that it will hire a given local's workers and will honor the terms of that local's NFSA-negotiated agreement whenever it engages in a project within the local's territorial jurisdiction. NFSA's Director of Labor Relations Cornelius Cahill explained the effect of these NFSA-negotiated agreements during his deposition:
 
 
 6
 Q: (Funds' Counsel): When [NFSA] entered into [] bargaining with... [for example] a local union in California, and subsequently signed a contract on behalf of its members, was Fairfield... bound by that contract?
 
 
 7
 A: (Mr. Cahill): Yes, it would be.
 
 
 8
 Q: Can you explain how that would be if they weren't working in California?
 
 
 9
 A: Well, they would be bound to that agreement if they went into that particular geographical location. There were advantages to that to contractors. The contractor would call up the local that they were going into and would say: I'm a member of [NFSA], they have my bargaining rights. I need x number of people to work, I'm signatory by virtue of my membership. And they would not have to go in and negotiate with the local. They would just be able to ask for manpower.
 
 
 10
 Beginning in 1973, NFSA entered multi-employer bargaining agreements on behalf of its member-employers, including Fairfield, with Locals 669 and 676, which cover New York and Connecticut, respectively.
 
 
 11
 In 1993, NFSA and Local 669 negotiated a collective bargaining agreement ("the 669 Agreement"), that was in effect from April 10, 1994 until March 31, 1997. As a member of NFSA at the time the 669 Agreement took effect, Fairfield was bound by it.[1] On May 9, 1994, shortly after the 669 Agreement took effect, Fairfield withdrew its membership in NFSA, thereby terminating NFSA's authority to enter into future agreements on Fairfield's behalf.
 
 
 12
 Following Fairfield's withdrawal, NFSA and Fairfield independently entered into negotiations with Local 676 for separate collective bargaining agreements covering Connecticut. The existing agreement with Local 676 (the "First 676 Agreement"), which had been negotiated by NFSA and under which Fairfield remained obligated, was set to expire on July 31, 1994. In short order, NFSA's negotiations with Local 676 yielded a new collective bargaining agreement (the "Second 676 Agreement") between its member-employers and Local 676.
 
 
 13
 However, the negotiations between Fairfield and Local 676 failed to produce an agreement. As a result, with the expiration of the First Local 676 Agreement on July 31, 1994, Local 676 called a strike against Fairfield. Fairfield immediately responded by hiring permanent non-union replacements. Fairfield ceased making the payments to the Funds that had been required by the First 676 Agreement. Fairfield instead established its own health insurance coverage and pension benefit programs for its Connecticut employees, making contributions to these programs on behalf of its new non-union replacement work force.
 
 
 14
 On March 6, 1995, the Trustees of the Funds filed suit pursuant to ERISA § 515, 29 U.S.C. § 1145, to recover payments they alleged were owed the Funds on behalf of Fairfield's Connecticut employees for two separate periods of delinquency: July 31, 1994 through March 31, 1997, and from August 1, 1992 through July 31, 1994. After the close of discovery, the Trustees moved for summary judgment. In opposition, Fairfield claimed for the period after July 31, 1994 that it was not obligated to contribute because it was not a party to the NFSA-negotiated Second 676 Agreement. As for the payments sought for the period through July 31, 1994, Fairfield argued that there were disputed material facts as to whether it was actually in arrears.
 
 
 15
 The district court disagreed with Fairfield on both issues and granted summary judgment in favor of the Trustees, from which Fairfield now appeals.
 
 DISCUSSION
 Section 515 provides in relevant part:
 
 16
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of... a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of... such agreement.
 
 
 17
 This provision establishes "an independent federal right of action distinct from the contract on which the duty to contribute is based," through which ERISA funds may seek to compel employer contribution. James F. Jorden, Waldemar J. Pflepsen, Jr., & Stephen H. Goldberg, Handbook on ERISA Litigation § 7.01[A][1], at 7-5 (2d ed. 2000).
 
 A. July 31, 1994 to March 31, 1997
 
 18
 The Trustees' theory of recovery for the period from July 31, 1994 to March 31, 1997 is based on a provision--termed by the parties "the Traveling Clause"--in the 669 Agreement, the NFSA-negotiated agreement with Local 669 of New York which was entered into while Fairfield was still a NFSA member. The Traveling Clause provides in pertinent part:
 
 
 19
 [Art. 6]: This Agreement applies to the United States... except in the present territory covered by the local agreement[] in... Connecticut-676. It is agreed that the contractor members who are subscribers to this Agreement shall, when performing work within the jurisdiction of any other Sprinkler Fitters Local Union, adhere to and be bound by the terms and conditions of the Collective Bargaining Agreement negotiated by [NFSA] with these other Sprinkler Fitters Local Unions.
 
 
 20
 The Trustees contend that the Traveling Clause's effect is to obligate Fairfield to adhere to the terms of the Second 676 Agreement whenever Fairfield operates in Connecticut, even though Fairfield was not a contracting party to the Second 676 Agreement.
 
 
 21
 Relying on this conception of the Traveling Clause, the Trustees argue that the Funds are entitled to recover against Fairfield under ERISA § 515 for violation of the Second 676 Agreement's requirement that employers operating in Connecticut contribute to the Funds. The district court agreed with the Trustees and granted summary judgment in their favor.
 
 
 22
 On appeal, Fairfield argues the district court erred because § 302(a) of the LMRA, 29 U.S.C. § 186(a), prohibits it from contributing to the Funds for the period after July 31, 1994.[2] Setting aside our considerable doubts as to the merits of the Trustees' novel theory of recovery--including whether it even presents an actionable theory of recovery under ERISA § 515 since Fairfield was not a party to the Second 676 Agreement--we agree with Fairfield that § 302(a) of the LMRA precludes contributions after July 31, 1994.
 
 
 23
 Section 302(a) of the LMRA makes it unlawful as a general matter for employers to provide payments to union affiliated representatives and entities, including union established ERISA funds, beyond narrowly prescribed exceptions set out in § 302(c). See 29 U.S.C. §§ 186(a), 186(c); see also Local 144 Nursing Home Pension Fund v. Demisay, 508 U.S. 581, 588 (1993) (Section 302 restricts payments to labor union trust funds). As we noted in Moglia v. Geoghegan, 403 F.2d 110 (2d Cir. 1968):
 
 
 24
 The reason for the rigid structure of Section 302 is to insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties. Any erosion of the strict requirements of this section could provide an unintended loophole for the unscrupulous, and could result in a diversion of funds away from the proper parties as had occurred before Section 302 was enacted.
 
 
 25
 Id. 116 (internal citation omitted).
 
 
 26
 Hence, recovery by the Funds is precluded by § 302(a) unless one of the statutory exceptions provided by § 302(c) applies.[3] Recognizing this, the Trustees identify the § 302(c)(5) exception and contend it applies to permit recovery by the Funds for the period after July 31, 1994. We disagree.[4]
 
 
 27
 Section 302(c)(5) operates to permit employer payments to union trust funds, excepting them from the prohibition of § 302(a), if, among other conditions:
 
 
 28
 1. "the detailed basis on which such payments are to be made is specified in a written agreement with the employer;" 29 U.S.C. § 186(c)(5)(B), and
 
 
 29
 2. "such payments are held in trust for the purpose of paying... for the benefit of [the] employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance[.]" 29 U.S.C. § 186(c)(5)(A).
 
 
 30
 Strict compliance with these conditions is required.[5] See, e.g., Bricklayers, Masons and Plasterers Inter. v. Stuart Plastering Co., 512 F.2d 1017, 1024-25 (5th Cir. 1975).
 
 
 31
 The Trustees' theory of recovery for the period after July 31, 1994, however, fails to satisfy these conditions, thereby precluding application of the § 302(c) exception to salvage the Trustees' claim. First, there is no "written agreement with the employer" that specifies "the detailed basis on which such payments are to be made." The 669 Agreement itself, the only written agreement with Fairfield that the Trustees identify, does not set out "the detailed basis" for making contributions on behalf of Fairfield's Connecticut employees. Nor is the "written agreement" requirement satisfied by the 669 Agreement's purported incorporation (through its Traveling Clause) of the contributions established in the Second 676 Agreement. See Moglia, 403 F.2d at 117 ("The statutory requirement of a written agreement is not a minor technicality which may be dispensed with.... A written agreement is necessary before payments may be made under the section."). It is a settled principle of federal labor law that "an instrument may incorporate by reference only the terms of an instrument already in existence." Stuart Plastering Co., 512 F.2d at 1029; see, e.g., Bd. of Tr. of the United Food & Commercial Workers, Local 26 v. Allied Provision Co., Civ. No. 88-3344, 1989 WL 135557, at *2 (E.D. Mich. March 31, 1989) (same); Local 1316, Int'l Bhd. of Elec. Workers v. Superior Contractors and Assocs., Inc., 608 F. Supp. 1246, 1249-50 (N.D. Ga. 1985) (same); see also T. Bart Gary, Incorporation by Reference and Flow-Down Clauses, 10-Aug Constr. 1, at *44 (ABA Aug. 1990). The Second 676 Agreement was not in existence at the time the 669 Agreement was executed. Accordingly, the contribution obligations set out in the Second 676 Agreement are not incorporated into the 669 Agreement, and thus cannot serve as a basis for § 302(c)(5)'s required writing.[6]
 
 
 32
 A further fatal defect with the Trustees' attempt to rely on § 302(c)(5) to compel contribution under the 669 Agreement is that any contributions made would not be "for the purpose of paying... for the benefit of [Fairfield's] employees, their families and dependents[.]" 29 U.S.C. § 186(c)(5)(A). By its express terms, § 302(c)(5) only applies where the payments in question are made to ERISA trust funds established for "the sole and exclusive benefit of the employees of such employer and their families and dependents" and where the payments are "for the benefit of" the employer's employees. 29 U.S.C. §§ 302(c)(5), 302(c)(5)(A); see also E.A. Walsh v. Schlecht, 429 U.S. 401, 407 (1977) (payments must be made "on behalf of" or "for the benefit of" the employer's employees); Todd v. Benal Concrete Constr. Co., 710 F.2d 581, 583 (9th Cir. 1983). None of Fairfield's employees for the period in question were union members. Absent union membership, none were (or will be in the future) entitled to the health and pension benefits provided through the union Funds. Application of the § 302(c)(5) exception is therefore precluded.
 
 
 33
 In light of the inapplicability of the § 302(c)(5) exception, § 302(a) operates to prohibit recovery by the Funds through the 669 Agreement's Traveling Clause for the period after July 31, 1994.[7] Cf. Maxwell v. Lucky Constr. Co., 710 F.2d 1395, 1397-98 (9th Cir. 1983).
 
 B. August 1, 1992 to July 31, 1994
 
 34
 The district court also granted summary judgment in favor of the Trustees for delinquent payments purportedly due under the First 676 Agreement for the period up through July 31, 1994. We vacate the entry of summary judgment because our de novo review reveals that there are disputed facts as to whether Fairfield is actually delinquent. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202-03 (2d Cir. 1995) (review of grant of summary judgment is de novo).
 
 
 35
 "Summary judgment is proper only if the admissible evidence establishes that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000) (quoting Fed. R. Civ. P. 56(c)). Here, the Funds' billing records reveal material inconsistencies as to whether any additional amounts are owed by Fairfield, and, if so, what amounts are owed. With such facts in dispute, summary disposition is inappropriate.
 
 CONCLUSION
 
 36
 The judgment of the district court is hereby reversed in part and vacated in part. The district court shall dismiss with prejudice the Trustees' suit to the extent it seeks contribution to the Funds from Fairfield for the period after July 31, 1994. On remand, Fairfield may move for attorneys' fees related to this portion of the suit. See 29 U.S.C. § 1132(g).
 
 
 37
 The district court's order of summary judgment in favor of the Trustees for delinquent fees for the period from August 1, 1992 through July 31, 1994 is vacated and remanded for further proceedings.
 
 
 38
 Finally, the Trustees' cross-appeal for attorneys' fees is dismissed. Costs to defendant-appellant Fairfield.
 
 
 
 NOTES:
 
 
 *
 The Honorable Victor Marrero, of the United States District Court for the Southern District of New York, sitting by designation.
 
 
 [1]
 Fairfield argues on appeal that NFSA did not possess authority to enter into collective bargaining agreements on Fairfield's behalf with local unions other than Local 676 of Connecticut. Because this issue has no bearing on our disposition of the case, we decline to reach it and, exclusively for purposes of this appeal, assume that NFSA actually possessed broader authority.
 
 
 [2]
 Fairfield failed to identify the LMRA § 302(a) prohibition to the district court. Indeed, it first addressed § 302(a) in supplemental briefing to this court following oral argument in response to the court's specific inquiry as to § 302(a)'s effect. See Fed. R. App. 28(j). Nonetheless, because the issue is a question of law and because we conclude that ordering Fairfield to contribute in the face of § 302(a)'s clear statutory prohibition against such contributions would be tantamount to ordering Fairfield to violate federal law, we believe it appropriate to consider the issue. See, e.g., Singleton v. Wulff, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").
 
 
 [3]
 In Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990), this court "construed section 515" to limit "the defenses available to an employer when sued by an employee benefit plan." Id. at 314. We held that only two employer defenses are permitted in ERISA § 515 contribution actions: "(1) that the [ERISA fund] contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." Id. at 314 (internal quotation marks omitted). Section 302(a)'s prohibition falls within Benson's first category of permissible defenses to ERISA § 515 actions because it renders the contribution sought illegal. See, e.g., Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 88 (1982) (payments that violate § 302 are an exception to an employer's obligation under ERISA § 515); Central States Southeast and Southwest Areas Pension Fund v. D & K Distrib. Co., 774 F.2d 1161, 1985 WL 13705, at *5 (6th Cir. 1985) (table case).
 
 
 [4]
 My dissenting colleague argues for a reversal and remand for trial on the question of whether Fairfield is a party to the 669 Agreement, without assuming, as we do here, that Fairfield is contractually obligated under the 669 Agreement. The dissent's proposed approach would gain little, however, for even if a jury were to expressly find that Fairfield was indeed a party to the 669 Agreement, the legality under § 302 of payments pursuant to the Traveling Clause would still remain to be addressed.
 
 
 [5]
 Judge Van Graafeiland's dissent contends that we engage in "two layers of protection." We disagree; we are simply enforcing the strict anti-corruption policies embodied in § 302 of the LMRA as Congress intended.
 
 
 [6]
 We note this reasoning could also be applied independently of any consideration of § 302(c) to challenge the validity of the Traveling Clause's incorporation of the Second 676 Agreement.
 
 
 [7]
 Judge Van Graafeiland's dissent makes reference to Local Union No. 36 Sheet Metal Workers' Int'l Assoc. v. Atlas Air Conditioning Co., 926 F.2d 770 (8th Cir. 1991) and McKinstry Co. v. Sheet Metal Workers' Int'l, 859 F.2d 1382 (9th 1988), for the proposition that labor union traveling clauses are commonly utilized and enforced in the construction industry. However, these cases are inapposite as they simply deal with issues of contractual interpretation--i.e., whether the traveling clauses in the collective bargaining agreements were drafted to have extraterritorial effects. Neither opinion addresses the legality of such provisions pursuant to § 302(a). More to the point, neither case can be read to support, either explicitly or implicitly, an incorporation through the 669 Agreement's Traveling Clause of the Second 676 Agreement, an agreement that was not in effect at the time the Traveling Clause came into being.
 
 
 
 39
 VAN GRAAFEILAND, Senior Circuit Judge, dissenting from majority opinion:
 
 
 40
 I respectfully dissent.
 
 
 41
 First, Fairfield did not argue, before the district court or in its appellate briefs, that contributions to the Funds are illegal under § 302(a). It is well established that "a federal appellate court will generally not consider an issue not raised below," absent manifest injustice. Hutton Constr. Co. v. County of Rockland, 52 F.3d 1191, 1193 (2nd Cir. 1995). No such injustice has been shown in this case.
 
 
 42
 Second, the majority assumes that Fairfield was a party to the 669 Agreement. Fairfield's primary point on appeal is that it was not a party. Assuming Fairfield was a party to the 669 Agreement, however, the Traveling Clause required Fairfield to hire 676 employees when working in Connecticut. The majority protects Fairfield from itself by ruling that the Traveling Clause is illegal. Clauses of this type appear to be quite common in the construction industry. See, e.g., Local Union No. 36, Sheet Metal Workers' Int'l Assoc. v. Atlas Air Conditioning Co., 926 F.2d 770, 772 (8th Cir. 1991); McKinstry Co. v. Sheet Metal Workers' International, 859 F.2d 1382 (9th Cir. 1988). The majority would disturb settled expectations throughout the industry by refusing to enforce the Traveling Clause.
 
 
 43
 Third, assuming Fairfield was a party to the 669 agreement, the requirements of § 302(c)(5) are met. As to the majority's point (which was never argued by Fairfield) that an agreement may not incorporate by reference an agreement not then in existence, the facts render it inapposite. The 669 Agreement was entered into on April 8, 1994. On that date, the 676 Agreement that ran from August 1, 1992 through July 31, 1994 was still in force. The majority, then, holds that the Traveling Clause suddenly became unenforceable when the earlier 676 contract expired. This result is anomalous given that there were no significant changes in the contribution provisions of the 676 agreements. The majority also argues that contributions to the Funds would not be for the benefit of Fairfield's employees. However, assuming Fairfield was a party to the 669 contract, the Traveling Clause required Fairfield to hire 676 members. It would be strange to allow Fairfield to escape its obligations by hiring non-676 workers and then claiming that contributions to the Funds would not be for the benefit of its employees. This rationale, which makes a fund's right to collect from an employer contingent on the efforts of a union (e.g., whether the union has successfully required the employer to hire union members) also violates the purpose of § 515. Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2nd Cir. 1990) ("Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations. For this reason, Congress placed employee benefit plans in a position superior to the original promisee, analogous to a holder in due course.").
 
 
 44
 I would reverse the grant of summary judgment on the ground that Fairfield argued below and on appeal. Specifically, a jury should have determined, taking into account industry custom, including the fact that Fairfield did not participate in the 669 negotiations, whether Fairfield was a party to the 669 contract. The majority argues that this approach would accomplish little because, even if the jury found Fairfield was a party to the 669 Agreement, the legality of the payments under § 302 would remain at issue. I respectfully disagree. Fairfield's failure to argue the § 302 issue below, or even in its appellate briefs, amounts to a forfeiture, and the jury would not have been required to consider § 302 at all.
 
 
 45
 The majority engages in two layers of protectionism. First, it addresses an argument that Fairfield's attorneys were not creative enough to imagine below or on appeal. Second, it holds that a contractual provision entered into by a competent party is nevertheless illegal. I cannot join in this protectionism, and thus respectfully dissent.