Gina DeVITO, Charles Castelli, Ralph Vampini and Ruth Gordon, as Trustees of Local 1245 General Benefits Fund, Plaintiffs–Appellees–Cross–Appellants,

v.

HEMPSTEAD CHINA SHOP, INC., Defendant–Appellant–Cross– Appellee.

Nos. 1731, 1906, Dockets 93–9036, 93–9078.

United States Court of Appeals, Second Circuit.

Argued June 22, 1994.

Decided Oct. 19, 1994.

Mark N. Reinharz, Mineola, NY (Frederick D. Braid, Rains & Pogrebin, P.C., Mineola, NY, of counsel), for defendant-appellant-cross-appellee.

Patricia McConnell, New York City (Mary Jo Provenzano, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, of counsel), for plaintiffs-appellees-cross-appellants.

Before: MAHONEY and JACOBS, Circuit Judges, and TRAGER *, District Judge.

MAHONEY, Circuit Judge:

Defendant-appellant-cross-appellee Hempstead China Shop, Inc. ("HCS") appeals from a judgment entered January 20, 1994 in the United States District Court for the Eastern District of New York, Arthur D. Spatt, *Judge*. The district court awarded summary judgment in favor of the plaintiffs-appellees-cross-appellants, the Trustees of Local 1245 General Benefits Fund (the "Trustees"), who sought to compel HCS to make delinquent contributions to the Local 1245 General Benefits Fund (the "Benefits Fund")[1] pursuant to § 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145. *See DeVito v. Hempstead China Shop, Inc.*, 804 F.Supp. 481 (E.D.N.Y.1992) ("*DeVito I*"). The Trustees cross-appeal from the district court's determination of the attorney fees and postjudgment interest awarded to them. *See Devito v. Hempstead China Shop, Inc.*, 831 F.Supp. 1037 (E.D.N.Y.1993) ("*DeVito II*"), and *DeVito v. Hempstead China*

---

* The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

1. The Benefits Fund was merged into the Local 1245 Health Fund (the "Health Fund") on December 11, 1991.

*Shop, Inc.,* No. CV 91–5077 (ADS), order (E.D.N.Y. Jan. 13, 1994) (*"DeVito III"*).

We reverse the summary judgment in favor of the Trustees and remand the case to the district court. In view of this disposition, we do not address the issues presented by the Trustees' cross-appeal.

### Background

The facts of this case are set forth in the district court's two published opinions, *DeVito I* and *Devito II,* familiarity with which is assumed. We briefly summarize those facts necessary for an understanding of the issues presented by this appeal.

The case revolves around a collective bargaining agreement (the "Agreement") between HCS and Local 1245 of the United Food and Commercial Workers Union (the "Union"). Pursuant to the Agreement, the Union represented the employees at the HCS store located in the Roosevelt Field Shopping Center in Garden City, New York (the "Employees"). *DeVito I,* 804 F.Supp. at 482. The Agreement required HCS to make payments to the Benefits Fund on behalf of the Employees.

In October 1989, Times Square Stores, Seedman's Inc. ("TSS"), which employed approximately 1,600 of the Benefits Fund's 1,750 participants in its fourteen stores and paid approximately 88% of the Benefits Fund's contributions, announced that it intended to close all its stores and lay off all its employees by December 31, 1989. *DeVito I,* 804 F.Supp. at 483. Reacting to this development, the Trustees eliminated the payment of hospital, medical, surgical, major medical, and life insurance benefits, retaining only dental, optical, and prescription coverages, as of January 1, 1990. *Id.* HCS thereafter failed to make contributions to the Benefits Fund or its successor, the Health Fund, *see supra* note 1, in behalf of the Employees for the twenty-month period from August 1990 through the expiration of the Agreement on March 31, 1992.[2]

The controversy in this case centers upon Section 14(A) of the Agreement, which provides:

*Section 14.*

*HEALTH CONTRIBUTIONS:*

A. The Employer shall on the tenth (10th) day of each and every month during the period of this Agreement, contribute to Local 1245 General Benefit[s] Fund the following amounts *to insure and protect the health benefits presently enjoyed by the employees.*

1. Effective April 1, 1989, the Employer shall increase contributions to the General Benefits Fund for all eligible full-time employees to ninety-five ($95.00) dollars per month *to maintain the current level of benefits.*

2. Effective January 1, 1990, the Employer shall increase contributions to the General Benefits Fund for all eligible full-time employees to one-hundred and fifteen ($115.00) dollars per month *to maintain the current level of benefits.*

3. Effective January 1, 1991, the Employer shall increase contributions to the General Benefits Fund for all eligible full-time employees to one-hundred and thirty-five ($135.00) dollars per month *to maintain the current level of benefits.*

4. Effective April 1, 1989, the Employer shall contribute to the General Benefits Fund for all eligible part-time employees twenty-five ($25.00) dollars per month *to maintain the present schedule of benefits.*

Emphasis added.

The Trustees contend that Section 14(A) imposed an unequivocal obligation to pay the stipulated contributions. HCS argues that the language that we have emphasized in our quotation of Section 14(A) relieved HCS of any obligation to continue contributions in the aftermath of the TSS-induced cutbacks in benefit payments. In granting summary judgment to the Trustees, Judge Spatt held that this Court's opinion in *Benson v. Brower's Moving & Storage Inc.,* 907 F.2d 310 (2d

---

**2.** The Trustees claim that HCS also failed to make the contributions required for the month of April 1989. HCS denies that this is the case. In any event, the alleged delinquency has no apparent connection to the issues presented by this appeal.

Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990), foreclosed the defenses raised by HCS. *DeVito I,* 804 F.Supp. at 488–89. HCS appeals from this determination.

In subsequent rulings, Judge Spatt awarded the Trustees (1) attorney's fees in an amount lower than that requested by the Trustees, *see DeVito II,* 831 F.Supp. at 1042–45; and (2) penalty interest pursuant to 29 U.S.C. § 1132(g)(2)(C) to the date of judgment, but not thereafter until the date of payment of the judgment. *See DeVito II,* 831 F.Supp. at 1042, and *DeVito III,* at 2–3. The Trustees cross-appeal from the these determinations.

## Discussion

A. *The Appeal.*

█ In *Benson,* we construed ERISA § 515, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. We ruled that in enacting this provision, Congress intended to limit the defenses available to an employer when sued by an employee benefit plan. We explained that under ERISA § 515, multiemployer pension funds, although third-party beneficiaries of collective bargaining agreements between employers and unions, are nevertheless "in a position superior to the original promisee [the union], analogous to a holder in due course." *Id.* at 314. Thus, we stated that defenses such as a union fraud inducing

an employer's entry into a collective bargaining agreement did not excuse the employer's duty under the collective bargaining agreement to make contributions to an employee benefit plan. *Id.* at 313–14. We stated that:

> Our research has disclosed only two defenses recognized by the courts: (1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable). Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole.

*Id.* at 314 (citations omitted).

Invoking this language, Judge Spatt ruled that the pension contributions by HCS were not illegal[3] and the Agreement was not void, *see DeVito I,* 804 F.Supp. at 488, and that summary judgment should accordingly be awarded to the Trustees against HCS. *See id.* at 488–90. We agree that the contributions were not illegal and the Agreement was not void. HCS is not, however, "call[ing] into question the [Union's] ability to enforce the contract as a whole," and thus is not presenting a defense of the nature exemplified by these categories. Rather, unlike the situation in *Benson,* HCS contends that it did not "knowingly sign[ ] an agreement that requires [it] to contribute to" the Benefits Fund under the circumstances of this case. This contention is expressly envisioned and authorized by ERISA § 515, which requires contributions only "in accordance with the terms and conditions of" the Agreement. As the Third Circuit stated in *Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.,* 989 F.2d 132, 138 (3d Cir. 1993): "Although a variety of contract de-

---

3. On appeal, HCS presses the argument that its payments to the Benefits Fund would be in violation of the law because the Benefits Fund, as operated in the aftermath of the TSS bankruptcy, violated § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). Section 302(c)(5) authorizes employer contributions to a trust fund "established by [the representative of the employees], for the sole and exclusive benefit of the employees of such employer." In *Local 144 Nursing Home Pension Fund v. Demisay,* —— U.S. ——, 113 S.Ct. 2252, 124 L.Ed.2d 522

(1993), the Supreme Court ruled that § 302(c)(5) "relates, not to the purpose for which the trust fund is in fact used ...; but rather to the purpose for which the trust fund is 'established,' § 302(c)(5), and for which the payments are 'held in trust,' § 302(c)(5)(A)." *Id.* at ——, 113 S.Ct. at 2257. HCS does not contest that the Benefit Fund was properly established under § 302(c)(5), but contends that it was subsequently operated in a manner inconsistent with § 302(c)(5). *Demisay* precludes this argument.

fenses would not preclude [plaintiffs] from enforcing their right to collect payments pursuant to the collective bargaining agreement, [they] are not entitled to enforce a nonexistent contractual obligation."

Thus, if the Agreement, by its own terms, does not require continuing contributions absent the continuing existence of a condition precedent, performance of the obligation that the Trustees seek to enforce may be excused. If the condition is not met, the employer is not required by § 515 to continue contributions because the contractual obligation lapses. The district court incorrectly deemed this defense inapplicable in this case.

HCS contends that the language of Section 14(A) of the Agreement includes conditions precedent to its obligation to make continuing contributions to the Benefits Fund, making those contributions contingent upon the maintenance of a certain level of benefits for its employees. Section 14(a) repeatedly states that HCS must make specified contributions to the Benefits Fund "to maintain ... current" or "present" benefit levels. Section 14(A) also specifies that HCS's contributions shall be made "to insure and protect the health benefits presently enjoyed by the employees."

HCS argues that we must interpret contractual language so as to "give[ ] a reasonable and effective meaning to all the terms of [the] contract." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985). Thus, it contends that the "to insure and protect" and the "to maintain" language of Section 14(A) of the Agreement constitute a condition to its obligation to make continuing contributions to the Benefits Fund. According to HCS, when the Fund failed "to maintain" an appropriate level of benefits, the condition failed, and its obligation to make contributions ceased, notwithstanding (and indeed, in accordance with) ERISA § 515.

■ We recognize, of course, that the law of contracts disfavors conditions if there is doubt as to the meaning of contractual language. *See* Restatement (Second) of Contracts § 227 (1981). We also believe, however, that the "to maintain" language in Section 14(A) of the Agreement, which is repeated no

less than four times when describing HCS's obligations to make the disputed contributions, as well its "to insure and protect" language, may be more than a mere expression of purpose. It is at least ambiguous whether this language reflects an intent by the parties to create a condition precedent to HCS's continuing contributions to the Benefits Fund. To the extent that this ambiguity exists, a textual analysis of the Agreement may be supplemented by an exploration of extrinsic evidence concerning the parties' intent, and summary judgment is inappropriate. *See Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir.1993).

We therefore conclude that summary judgment was inappropriately awarded to the Trustees, and that HCS is entitled to prevail on its appeal. In so ruling, however, we are not endorsing HCS's ancillary argument that in any event, it was not obligated to make contributions to the Health Fund after the Benefits Fund was merged into the Health Fund. *See supra* note 1. It is true, as HCS points out, that the language of Section 14(A) of the Agreement requires contributions only to the Benefits Fund. The agreement and declaration of trust (the "Declaration") that established the Benefits Fund, however, specifically provided that the Benefits Fund might be "merged into or consolidated with another Fund organized pursuant to the provisions of Section 302(c) of the Labor Management Relations Act of 1947, as amended." We are not presented with any claim that the Health Fund fails to meet the quoted description, or that the procedures specified in the Declaration for the authorization of a merger of the Benefits Fund into the Health Fund were not followed.

**B.** *The Cross–Appeal.*

In view of our disposition of HCS's appeal, we do not address the issues raised by the Trustees' cross-appeal. Should the Trustees prevail on remand, their claim for attorney fees and costs will obviously be substantially different from that addressed in *DeVito II*, and in any event, this is a matter primarily committed to the discretion of the district

court. *See Pierce v. Underwood,* 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988); *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1342 (2d Cir.1994). The question whether penalty interest pursuant to 29 U.S.C. § 1132(g)(2)(C) should extend to the date of judgment or to the date of payment of the judgment is not ripe for decision. Any such determination would be an unwarranted advisory opinion at this juncture. As a practical matter, if the issue persists and arises on a future appeal, a reversal would require only a limited remand for a straightforward recomputation of damages.

Finally, we do not address in the first instance HCS's counterclaim for a refund of the contributions it paid to the Fund from January to July 1990, after the Trustees reduced benefit levels in response to the TSS bankruptcy. Even if HCS prevails on its contractual argument, significant additional considerations would apply to any claim for a refund of prior contributions. *See Brown v. Health Care & Retirement Corp. of Am.,* 25 F.3d 90, 93–94 (2d Cir.1994); *Frank L. Ciminelli Constr. Co. v. Buffalo Laborers Supplemental Unemployment Benefit Fund,* 976 F.2d 834, 835 (2d Cir.1992); *Dumac Forestry Servs. v. International Bhd. of Elec. Workers,* 814 F.2d 79, 81–83 (2d Cir.1987). This constellation of issues is best considered by the district court in the first instance, should this prove necessary.

### Conclusion

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.