**Robert GREENES, Justin McCarthy, Lawrence Scuder, Bernard Pellegrino and Demos Demopoulos, as Trustees and Fiduciaries of the Local 553 Pension, Benefits and Deferred Compensation Trust Funds, Plaintiffs,**

v.

**VIJAX FUEL CORP. and Consumers, Energy Group, Inc., Local 955, Uswa, Tcu, Defendants.**

**No. 02 Civ. 0450(PKC).**

United States District Court, S.D. New York.

June 9, 2004.

William K. Wolf, Friedman, Wolf & Grisi, New York City, for Plaintiffs.

Keith Jason Gutstein, Kaufman Schneider & Bianco, LLP, Jericho, NY, for Defendants.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Defendants move to amend their answer pursuant to Rule 15(a), seeking leave to add a ninth affirmative defense that theoretically would provide a damages set-off. For the reasons explained below, defendants' motion to amend is denied.

The Complaint in this action was filed on January 18, 2002. Plaintiffs are trustees of the pension, benefits, and deferred compensation funds (the "Funds") of Local 553. The trustees brought this action pursuant to the Employee Retirement Income Security Act of 1975 ("ERISA"), claiming that defendants Vijax Fuel Corp. ("Vijax") and Consumers Energy Group, Inc. ("Consumers") had an alter ego relationship, and underreported and underpaid contributions owed to the Funds pursuant to a collective bargaining agreement. (Complaint ¶¶ 37, 39–48) Vijax and Consumers filed their answer on March 13, 2002.

According to defendants, Vijax was party to a collective bargaining agreement ("CBA") with Teamsters Local Union 553 ("Local 553"), and therefore required to contribute to the Funds. (Affidavit of Keith Gutstein ("Gutstein Affidavit") ¶ 2)

The CBA included a so-called "most favored nation" clause, which provided that if Local 553 entered into an agreement that "permits the employment of its members under terms and conditions less favorable to said members than are herein provided, the Employer [Vijax] shall have the right to demand and receive said more favorable contract ..." (Gutstein Affidavit ¶ 5) Defendants contend that Local 553 has an agreement with non-party Petro, Inc. that provides Petro with "less onerous conditions" than those applied to Vijax. (Gutstein Affidavit ¶ 6) According to the defendants, the terms applied to Petro should apply to Vijax by virtue of the CBA's most favored nations provision, and off-set any damages assessed against Vijax in this action. (Gutstein Affidavit ¶¶ 7–10)

Defendants have long sought discovery into Local 553's relationship with Petro. Defendants appear to have first raised the issue in March, 2003, when this action was assigned to Judge Chin. (Affidavit in Reply ¶ 10) As recently as October, 2003, defendants argued that discovery into the Petro relationship should be allowed because it would be probative of plaintiffs' motivation in commencing this action against the defendants, in the event that Petro maintained an alter ego relationship similar the one alleged to exist between Vijax and Consumers. (See Letter, Keith Gutstein Esq. to Hon. Denny Chin, Oct. 29, 2003 at 2) Defendants coupled this "credibility" argument with their contract-based "most favored nations" argument. I denied defendants' discovery request at a pretrial conference held on January 21, 2004, and later granted defendants leave to file the instant motion to amend to assert the proposed affirmative defense. (See Docket Entry Nos. 34, 36)

Defendants' proposed affirmative defense lacks a sound basis in the law of this Circuit. In Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310 (2d Cir.), cert. denied 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990), the trustees of an ERISA multiemployer employee benefit plan brought action against an employer seeking to recover funds under the agreement. The employer argued that the labor union affiliated with the trustees had abandoned the underlying collective bargaining agreement, thus negating its obligation to contribute to the benefit plan. See id. at 312. The Second Circuit affirmed the district court's determination that section 515 of ERISA precluded the employer from raising as a defense the union's abandonment of the collective bargaining agreement. See id. at 311. It stated that "Congress intended to insulate benefit plans from exactly these defenses in adding section 515 to ERISA." Id. at 313. Section 515 of ERISA states:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. By adopting this provision, Benson noted, Congress granted ERISA funds certain protections not afforded to typical third-party beneficiaries. See id. at 313, citing Lewis v. Benedict Coal Corp., 361 U.S. 459, 468–69, 80 S.Ct. 489, 494–95, 4 L.Ed.2d 442 (1960). "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." Id. at 314. According to the Second Circuit, section 515 established limitations on the defenses available to an employer when sued by a benefits plan. See id. At the time that Benson was written, the Second Circuit indicated

that it was aware of only two defenses available to employers: (1) that the pension contributions themselves are illegal, and (2), that the collective bargaining agreement is void, as opposed to voidable. *See id.* "Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Id. See also Flynn v. R.C. Tile,* 353 F.3d 953, 958 (D.C.Cir.2004) (section 515 "facilitates recovery of contributions from delinquent employers by limiting the defenses available to an employer in an action brought to enforce the obligation created by § 515.")

Vijax correctly points out that the bar established by *Benson* is not absolute. In *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 654 (2d Cir.1994), the Second Circuit held that if the underlying collective bargaining agreement explicitly states that an employer is no longer bound to contribute to an employee fund when contributions are contingent upon satisfaction of a condition precedent, the cessation of that condition precedent negates the obligation to continue payment. In *DeVito,* the employer argued that employer contributions to a benefits fund were conditioned upon the fund maintaining an "appropriate level of benefits ..." *Id.* "Although a variety of contract defenses would not preclude [plaintiffs] from enforcing their right to collect payments pursuant to the collective bargaining agreement, [they] are not entitled to enforce a nonexistent contractual obligation." *Id.* at 653, *quoting Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.,* 989 F.2d 132, 138 (3d Cir.1993). The Second Circuit believed that there was ambiguity relating to the contract's articulation of a condition precedent, and ruled that summary judgment would not be granted to the plaintiff

fund. *See id.* at 654. Applying *Benson* and *DeVito,* the district court in *Trustees of the Bricklayers and Allied Craftworkers v. Charles T. Driscoll Masonry Restoration Co.,* 165 F.Supp.2d 502, 510 (S.D.N.Y. 2001), held that in order for a fund to win summary judgment on a delinquent contributions claim, it "must show that the Agreement creates an unambiguous contractual obligation on the defendants to make contributions pursuant to the contended provisions." The collective bargaining agreement required the employer to pay into the fund only for employees performing work in a specified geographical area, the court found, and the fund's trustees could not pursue contributions for traveling employees not covered by the collective bargaining agreement. *See id.* at 511–13.

■ *DeVito* and *Trustees* lend no support to defendants' motion to amend. As defendants themselves point out, those opinions show "that an ERISA fund may not seek to enforce a nonexistent contractual obligation." (Mem. in Support at 5) Here, defendants seek to build an affirmative defense around the separate contractual terms reached between Local 553 and a non-party employer. This defense has no connection to whether defendants were required to contribute to the Fund, and seeks to import what is, in essence, a labor law dispute regarding Local 553's adherence to a clause unrelated to the defendants' obligations to contribute to the Funds. The proposed defense contradicts the protection afforded by section 515, and would vitiate *Benson's* holding to the point of irrelevance. *Benson* described the linkage of employer-union disputes with litigation over contributions to benefits funds as "the precise evil that Congress sought to avoid in enacting ERISA section 515." *Benson,* 907 F.2d at 316. *DeVito* and *Trustees* did not establish the sweeping

**468**

exceptions to *Benson* that the defendants claim, but recognized discrete defenses when a fund seeks employer contributions not established in the governing collective bargaining agreement. Whether the agreement between Local 553 and Petro included provisions more favorable than those governing Local 553's agreement with Vijax does not control the question of whether Vijax has liability to make payment to the Funds. To allow the injection of the issue into a suit under ERISA over contribution to the Funds would erode the wall between the legal identity of an ERISA benefits fund and an affiliated labor organization.

Plaintiffs note that approximately 57 employers are signatories to a master contract with Local 553. (Opposition Mem. at 2–3) Defendants have provided no limiting principle that would preclude discovery as to whether the MFN has been honored in light of each individual contract made by Local 553. Undermining the goals of ERISA generally and section 515 in particular, a benefits fund that asserts an action for contribution would confront far-reaching discovery based on possible contract claims. Any disputed provision between a union and employer could threaten the financial viability of a benefits fund.

■ Under Rule 15(a), leave shall be "freely given when justice so requires," but amendment will not be allowed when it would be futile to do assert it. *See Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001); *Hanley v. Giordano's Restaurant, Inc.*, 1995 WL 442143, at *2–3 (S.D.N.Y. July 26, 1995) (denying motion to amend a complaint to include a section 515 claim asserting personal liability for contributions). Because the proposed affirmative defense is not a defense to liability, an amendment to assert it would be legally futile. Under the case law of this Circuit and the language of ERISA, defen-

dants' claimed damages offsets from the "most favored nations" clause do not provide a defense against plaintiffs' ERISA claims.

Therefore, defendants' motion to amend their answer is DENIED.

SO ORDERED.